United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 11, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-41196

_____

WESTERN SEAFOOD COMPANY,

             Plaintiff - Appellant,

                        v.

UNITED STATES OF AMERICA, ET AL,

             Defendants,

CITY OF FREEPORT, TEXAS; FREEPORT ECONOMIC DEVELOPMENT
CORPORATION,

             Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 3:03-CV-811
_____

Before DEMOSS, BENAVIDES, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

     In this takings case, Western Seafood Company ("Western
Seafood") appeals the district court's order granting summary
judgment in favor of the City of Freeport, Texas ("City"), and

_____

     [*] Pursuant to 5TH CIRCUIT RULE 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

the Freeport Economic Development Corporation ("FEDC"). For the reasons that follow, we affirm the order of summary judgment on Western Seafood's claim under the United States Constitution. On Western Seafood's claim under the Texas Constitution, we vacate the order of the district court and remand for reconsideration of Western Seafood's claim in light of Texas Government Code § 2206.001 ("Limitations on the Use of Eminent Domain Act").

## I. BACKGROUND

In an effort to foster economic development, the City seeks to seize a portion of Western Seafood's property along the Old Brazos River, approximately 0.86 of an acre including about 330 feet of waterfront. The City intends to transfer the taken property to Western Seafood's neighbor, Freeport Waterfront Properties, ("FWP"), a private entity, for the purpose of building a private marina. Western Seafood provides supplies and services to commercial shrimp trawlers operating on the Old Brazos River. The contested land includes Western Seafood's docks, which the shrimp trawlers use to offload and deliver their shrimp to Western Seafood for processing.

In September 2001, the City initiated a master planning process to develop a revitalization plan. The resulting report described the City's downtown area as being in serious decline and largely vacant. The master plan argued that the creation of

2

a marina was "probably the single most important development that can bring significant economic stimulus to the city." The City planned to finance the marina through low interest loans of public money from the City through the FEDC.[**] The marina would be constructed, owned, and operated by FWP, a company owned by Hiram Walker Royall. Mr. Royall is a member of the Blaffer family, which is a major landowner in downtown Freeport. On February 2, 2003, the Freeport City Council passed a resolution urging the FEDC to take on the marina project. The FEDC passed a resolution adopting the project on February 27, 2003.

## II. PROCEDURAL HISTORY

On September 25, 2003, when it learned that the City had filed for a permit with the United States Army Corps of Engineers, Plaintiff Western Seafood filed a complaint for injunctive relief, seeking to prevent the United States and the City from building marina piers in front of Western Seafood's property. Western Seafood simultaneously filed a motion for preliminary injunction to prevent the City from commencing a condemnation suit in state court. Because the City withdrew its permit application, the district court denied the request for injunctive relief at a December 5, 2003 hearing. In addition, the district court stayed and administratively closed the case, suspending the hearing for settlement discussions. At a status

---

[**] The City incorporated the FEDC pursuant to the Texas Development Corporation Act ("TDCA") of 1979.

3

conference on April 8, 2004, the district court granted Western
Seafood leave to file amended pleadings.  After the parties
failed to reach a settlement, the case was reopened in April 2004
and set for trial.

Western Seafood anticipated that the City would seek
condemnation in county court during April 2004.  It therefore
filed another complaint seeking a temporary restraining order.
At an April 13, 2004 hearing, the City stated that it would not
proceed with condemnation proceedings in state court because the
FEDC would be responsible for initiating the matter.[***]
Accordingly, the court denied the request for a temporary
restraining order.  Western Seafood thereafter dismissed the
United States and added the FEDC as a Defendant.

In both complaints, Western Seafood alleged that
Defendants'[****] proposed taking of its property violated the TDCA,
TEX. REV. CIV. STAT. art. 5190.6; the takings clause of the Texas
Constitution,[*****] TEX. CONST. art. 1, § 17; and the Takings Clause

---

[***] Under state law, the FEDC can exercise the right of
eminent domain if authorized to do so by the City.  TEX. REV. CIV.
STAT. art. 5190.6, § 4A(g).

[****] The City and the FEDC are hereinafter referred to as
"Defendants" or "Appellees."

[*****] The pertinent provision of the state constitution reads:

No person's property shall be taken, damaged or destroyed
for or applied to public use without adequate compensation
being made, unless by the consent of such person; and, when
taken, except for the use of the State, such compensation
shall be first made, or secured by a deposit of money.

4

of the United States Constitution,[******] U.S. CONST. amend. V.  On April 19, 2004, the City filed its summary judgment motion in both causes,[*******] arguing that because the principal purpose of the marina project was to revitalize the downtown area and the local economy, the project did not violate the takings provisions of either the federal or state constitutions.

On August 5, 2004, the district court granted summary judgment to Defendants. <u>Western Seafood Co. v. City of Freeport</u>, 346 F. Supp. 2d 892 ( S.D. Tex. 2004).  Relying on <u>Hawaii Housing Authority v. Midkiff</u>, 467 U.S. 229 (1984), the district court held that the City's proposed condemnation of Western Seafood's property fell within the scope of the Takings Clause. In <u>Midkiff</u>, the Supreme Court upheld the Hawaii Land Reform Act of 1967, which created a land condemnation scheme whereby property was transferred from lessors to lessees in order to reduce the concentration of land ownership in Hawaii. <u>Midkiff</u>, 467 U.S. at 233. The Supreme Court held that the Land Reform Act was constitutional because it did not benefit a particular class of individuals but rather served a conceivable public purpose by attacking the perceived evils of concentrated property ownership.

---

TEX. CONST. art. 1, § 1.

[******] The Takings Clause states: "nor shall private property be taken for public use, without just compensation."  U.S. CONST. amend. 5.

[*******] On July 9, 2004, the two cases were consolidated.

<u>Id.</u> at 241-42.

In the instant case, the district court found that the City's use of its eminent domain power to transfer property from one private party to another was rationally related to the conceivable public purpose of "promot[ing] the public interest in a healthy local economy." <u>Western Seafood</u>, 346 F. Supp. 2d at 901. The court stated, "The Supreme Court has made it abundantly clear that decisions about the most economically efficient use of property are squarely within the proper province of the legislature . . . ." <u>Id.</u> at 902.

The district court also found that the Texas Constitution did not protect Western Seafood's property from the Defendants' proposed exercise of eminent domain. Like its federal counterpart, the Texas Constitution allows takings for public use where adequate compensation is provided. The district court noted that Texas courts have interpreted the takings clause of the Texas Constitution, and in particular the "public use" requirement, to "require substantial deference to the legislature." <u>Id.</u> at 899. Following this approach, the district court looked to the TDCA, which declares that measures authorized by it serve the public purpose of economic development.[********] <u>Id.</u>

---

[********] The court quoted the following provisions:

(a) It is hereby found, determined, and declared:

(1) that the present and prospective right to gainful employment and general welfare of the people of this state

6

Having earlier concluded that the development plan in question was authorized by the TDCA, the district court reasoned that "the legislature has determined that the project serves the public interest in economic development." Id. at 900. The court therefore held that the proposed taking of Western Seafood's property did not offend the state constitution.

Western Seafood timely filed notice of appeal on August 30, 2004. It also filed motions in the district court and subsequently in this court seeking a stay of judgment and injunction pending appeal, both of which were originally denied. After the Supreme Court agreed to hear Kelo v. City of New London, 125 S. Ct. 2655 (2005), Western Seafood filed a motion for reconsideration of the stay and a motion for injunction in this court. This court granted Western Seafood's motions and abated the instant case pending the Kelo decision. After the

_____

> require as a public purpose the promotion and development of new and expanded business enterprises and the promotion and development of job training;
>
> . . .
>
> (4) that the means and measures authorized by this Act and the assistance provided in this Act, especially with respect to financing, are in the public interest and serve a public purpose of the state in promoting the welfare of the citizens of the state economically by the securing and retaining of business enterprises and the resulting maintenance of a higher level of employment, economic activity, and stability; . . . .

TEX. REV. CIV. STAT. art. 5190.6, §3(a).

7

Supreme Court decided in favor of the City of New London in <u>Kelo</u>, this court lifted the abatement on Defendants' motion and reinstated the district court's order denying the injunction. Having received the required authorization from the City under TEX. REV. CIV. STAT. art. 5190.6, § 4B(j), the FEDC brought condemnation proceedings on August 16, 2004 in state court.*********

In this appeal, Western Seafood seeks: (1) reversal and remand on both federal and state constitutional questions; or (2) reversal and remand on the federal constitutional question, in light of <u>Kelo</u>, and certification to the Texas Supreme Court of constitutionality of the City's taking under the State constitution and its legality under newly enacted state legislation placing limits on the government's eminent domain powers, TEX. GOV'T CODE § 2206.001 ("Limitations on the Use of Eminent Domain Act"). In addition, Western Seafood seeks an injunction against the state condemnation proceedings.

### III. ANALYSIS

A. <u>Standard of Review</u>

---

********* On August 18, 2004, the county court appointed a panel of special commissioners to conduct a hearing to determine the fair market value of the property. On April 17, 2006, the special commissioners conducted an administrative hearing and determined the amount of compensation to be paid to Western Seafood. On April 27, 2006, Western Seafood filed a pleading challenging the county court's jurisdiction, <u>inter alia</u>, through assertion of its state constitutional and statutory claims. On May 10, 2006, the FEDC filed it response.

8

We review the district court's grant of summary judgment <u>de novo</u> and employ the same standard as did the district court. <u>Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.</u>, 289 F.3d 373, 376 (5th Cir. 2002); <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1533 (5th Cir. 1994). We view the summary judgment evidence in the light most favorable to Western Seafood, the non-movant. <u>Id.</u>

B. <u>Federal Constitutional Claim</u>

The taking at issue does not offend the Fifth Amendment. <u>Kelo</u>, 125 S. Ct. 2655, which was issued after the district court's summary judgment order, is directly on point and supports this conclusion.

The facts in <u>Kelo</u> bear a strong resemblance to the circumstances of the instant case. Officials of the City of New London and the State of Connecticut recognized that New London faced serious economic decline. <u>Id.</u> at 2658. In response, New London authorized the New London Development Corporation (NLDC), with support of a state bond issue, to devise a plan to increase local economic activity and bolster tax revenue. <u>Id.</u> at 2659. The resulting plan focused on the waterfront Fort Trumbull area and proposed a comprehensive development containing commercial, residential and recreational spaces, the majority to be privately owned. <u>Id.</u> This proposal was thoroughly analyzed and deliberated prior to its adoption by the city council. The city council then authorized the NLDC to acquire property by eminent domain in the city's name, relying on a state statute that authorized the use

9

of eminent domain for economic development purposes. Id. at 2660.

In its decision in Kelo, the Court wrote that the "public use" requirement of the takings clause of the United States Constitution had long been interpreted to require only that a governmental taking have a "public purpose." Id. at 2662. In turn, the Court found that "public purpose" had been broadly defined, with substantial deference to legislative judgments. Id. at 2663. Reasoning that "[p]romoting economic development is a traditional and long accepted function of government" and that there is "no principled way of distinguishing economic development from the other public purposes that we have recognized," the Court concluded that economic development qualifies as a legitimate "public use" under the United States Constitution. Id. at 2665.

That the proposed taking involved the transfer of property from one private party to another, and that it directly benefitted a private party, did not invalidate the taking, the Court explained in Kelo, since "the government's pursuit of a public purpose will often benefit individual private parties." Id. at 2666. While a "one-to-one transfer of property, executed outside the confines of an integrated development plan" might be suspect, such a situation was not present. Id. at 2667. The Court found that "[t]he City has carefully formulated an economic development plan it believes will provide appreciable benefits to

10

the community . . ." and concluded that the "plan unquestionably serves a public purpose." Id. at 2665.

As in Kelo, the City of Freeport seeks to develop its waterfront to revitalize a flagging local economy. The proposed taking of Western Seafood's property is the result of a carefully considered development plan. It followed a commissioned study that reported on the economically depressed downtown area and suggested strategies for its revival. Appellees submitted approximately 240 pages of evidence for summary judgment that describe plans for the marina and related public improvement as part of an integrated redevelopment scheme created as the result of the study. The record does not suggest that the City is seeking an end other than economic development.  Therefore, we hold that the City's exercise of eminent domain does not violate the Takings Clause of the United States Constitution.

Western Seafood argues that Kelo is distinguishable because in the New London case the beneficiaries of the transfer of property were not identified prior to New London's exercise of eminent domain.  Western Seafood cites Kelo's warning that "the City [would not] be allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." Kelo, 124 S. Ct. at 2661. Western Seafood maintains that in its own case, the beneficiary FWP was identified prior to or at the earliest stages of the City's

planning process. Relying on Justice Kennedy's concurrence in Kelo, Western Seafood argues that these facts warrant a stricter standard of scrutiny than rational basis.  While acknowledging that a rational basis standard may be appropriate for many takings cases, Justice Kennedy argued in Kelo that a heightened standard, even a presumption of invalidity, was warranted for "private transfers in which the risk of undetected impermissible favoritism of private parties is [] acute. . . ." Id. at 2670.

We decline to address whether a heightened standard is necessary in certain cases because the facts in the instant case do not warrant it.  Western Seafood offers three pieces of evidence in support of its claim that the City exhibited favoritism towards the FWP and the Blaffer family.**********  But because the Blaffer estate heirs own acres of property along the river where the marina is to be built, the City's interest in their collaboration is logical.  The evidence provided by Western Seafood does not support the inference that the City exhibited

_____

********** First, at the December 5, 2003 hearing for preliminary injunction, the City's counsel stated, "[the Blaffers] were the ones who came forward and said, Hey, we'd like to do this project for you."  Second, at the April 8, 2004 status conference, Defendants' counsel replied to the district court's inquiry regarding the participation of the developer Royall by saying, "Mr. Royall is the principal, the, I guess, person in charge."  Third, Western Seafood cites to the master plan document dated October 2002 to demonstrate that the marina project had been proposed by the Blaffers before the development plan was drafted.  The document says, "Building a state-of-the-art marina right on the riverfront as proposed by the Intermedics property owners . . . ."  Western Seafood points out that the Blaffer heirs owned the Intermedics property.

12

favoritism or has a purpose other than to promote economic development in Freeport.

C. State Constitutional Claim

The district court decided Western Seafood's claims under the Texas Constitution before the enactment of Texas Government Code § 2206.001, the Limitations on Use of Eminent Domain Act ("Act"),*********** which went into effect on August 10, 2005. Because the Texas Courts have interpreted the "public use" language of the Texas Constitution with an eye to legislative declarations, and because the Act can be construed as a recent statement of the legislature's view of what constitutes "public use," we believe that the Act should be considered when assessing Western Seafood's claims under the Texas Constitution.

Article I, Section 17 of the Texas Constitution provides, "No person's property shall be taken, damaged, or destroyed for

---

*********** The Act states, in pertinent part:

(b) A governmental or private entity may not take private property through the use of eminent domain if the taking:
(1) confers a private benefit on a particular private party through the use of property;
(2) is for a public use that is merely a pretext to confer a private benefit on a particular private party; or
(3) is for economic development purposes, unless the economic development is a secondary purpose resulting from municipal community development or municipal urban renewal activities to eliminate an existing affirmative harm on society from slum or blighted areas . . . .

TEX. GOV'T CODE § 2206.001(b) (emphases added).  The statute lists in subsection (c) those "traditional" public use projects that remain unaffected by the statute's limitations.

13

or applied to public use without adequate compensation being made ...." Tex. Const. Art. I §17. Texas courts have held that the scope of "public use" in the above clause should be ascertained in part by reference to legislative determinations of public use. In Housing Authority of Dallas v. Higginbotham, 143 S.W.2d 79, 83 (Tex. 1940), the Texas Supreme Court declared, "The question of what is a public use is a question for the determination of the courts; however, where the legislature has declared a certain thing to be for public use, such declaration of the legislature must be given weight be the courts." See also West v. Whitehead, 238 S.W. 976, 978 (Tex. Civ. App.--San Antonio 1922, writ ref'd).

In Atwood v. Willacy County Navigation District, 271 S.W.2d 137, 140 (Tex. Civ. App.--San Antonio 1954, writ ref'd n.r.e.), the Texas Court of Civil Appeals strongly endorsed this deferential approach, writing "[t]he declaration of the Legislature upon the subject . . . is entitled to great weight and respect in arriving at a final decision of the question.". In that port-development case, the court further noted that "the Legislative branch through its use of committees and other fact finding methods may perhaps occupy a more favorable position than a judicial body in determining what is necessary to a successful operation of a municipal enterprise such as a port." Id. at 141. It concluded, "Consequently, the implied declaration by the legislative branch of government, that a taking under a right of eminent domain was for the public use, will be given deference by

14

the courts, until it is shown to involve an impossibility." <u>Id.</u> at 143. In <u>Davis v. City of Lubbock</u>, 326 S.W.2d 699 (Tex. 1959), while citing <u>Higginbotham</u> approvingly, the Texas Supreme Court undertook a more traditional judicial approach to interpreting public use. <u>Higginbotham</u>, <u>Atwood</u>, and <u>Davis</u>, while not recent cases, are the most recent cases on point.

The Act places new limitations on the use of eminent domain for economic development purposes, or where the taking confers a benefit on a particular private party. Tex. Govt. Code § 2206.001 (b). If the Act is construed as a legislative effort to narrow or redefine "public use," then, in light of the above-cited Texas caselaw, the Act may implicate Western Seafood's claims under the Texas Constitution. The Act does not hold itself out explicitly as narrowing or redefining public use, but the language of § 2206.001 (b) addresses the uses to which the taken property will be put. Moreover, the Act was passed in response to <u>Kelo</u>, which turned on the interpretation of the public use clause in the United States Constitution. Following <u>West</u>, <u>Higginbotham</u>, <u>Atwood</u>, and to a lesser extent <u>Davis</u>, therefore, a Texas court interpreting the Constitutional provision might look to the Act as recent legislative declaration regarding the scope of the public use provision. For these reasons, we remand Western Seafood's claim under the Texas Constitution to the district

15

court for reconsideration of in light of the Act.************

D. STATE STATUTORY CLAIM

Western Seafood also makes a direct challenge to the taking of its property under the Act. Because Western Seafood did not raise its state statutory claim before the district court, we decline to address it on appeal.************ Tex. Commercial Energy v. TXU Energy, Inc., 413 F.3d 503, 510 (5th Cir. 2005), cert. denied, 126 S. Ct. 1033 (2006).

E. INJUNCTION

Finally, Western Seafood challenges the district court's denial of its request for a temporary and a permanent injunction. Because the state court proceedings are already underway, and because none of the exceptions to the Anti-Injunction Act apply, see 28 U.S.C. § 2283, we affirm.

IV. CONCLUSION

Accordingly, we AFFIRM on federal constitutional and VACATE and REMAND on state constitutional grounds.

_____

************ As noted, a parallel proceeding involving this matter is under way in the Texas court system. It may be wisest for the district court to abstain and allow the Texas courts to address the effect, if any, of the Act on the Texas Constitution.

************ We note that it was impossible for Western Seafood to have raised this issue in the district court, and that Western Seafood has properly brought this issue before the state court in pending condemnation proceedings.

16