Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-10-00401-CV

**CITY OF LAREDO**,
Appellant

v.

Luis **MONTANO**, Cecilia Montano Mota, Cruz Jorge Montano, Clarence Hillburn, and
Clarence Hillburn as Executor of The Estate of Gloria Montano Hillburn, Deceased,
Appellees

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2008CVQ000134D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by: Catherine Stone, Chief Justice

Sitting: Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed: January 18, 2012

AFFIRMED IN PART CONDITIONED ON REMITTITUR;
REVERSED AND RENDERED IN PART

The City of Laredo appeals a judgment awarding attorney's fees to the appellees ("Montano Family") after a jury found that the City of Laredo intended to condemn property owned by the Montano Family for an unauthorized use. The City of Laredo challenges: (1) the legal and factual sufficiency of the evidence to support the attorney's fees awarded to the Montano Family; (2) the authority to award the Montano Family appellate attorney's fees; and

(3) the manner in which costs should be assessed for the preparation of the reporter's record. We affirm the portion of the judgment awarding attorney's fees through trial upon condition of remittitur, but we reverse the portion of the judgment conditionally awarding the Montano Family appellate attorney's fees.

## SUFFICIENCY

A trial court that renders a judgment denying the right to condemn may grant the property owner reasonable and necessary attorney's fees. TEX. PROP. CODE ANN. § 21.019(c) (West 2004).[1] The determination of the amount of fees that are reasonable and necessary is a question of fact for the jury. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Falls County Water Control & Imp. Dist. No. 1 v. Haak*, 220 S.W.3d 92, 94 (Tex. App.—Waco 2007, no pet.). Factors to be considered in determining the amount of reasonable attorney's fees include: (1) the time and labor required, the novelty and difficulty of the question presented, and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Haak*, 220 S.W.3d at 94. Evidence need not be presented on each of these factors. *Haak*, 220 S.W.3d at 94.

---

[1] Section 21.109(c) provides, in pertinent part, "A court that . . . renders a judgment denying a right to condemn may make an allowance to the property owner for reasonable and necessary fees for attorneys . . . incurred by the property owner to the date of the hearing or judgment." *Id*.

We review a legal sufficiency or "no evidence" challenge under the well-established principles set forth in *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Reviewing the evidence in the light most favorable to the finding and indulging every inference that would support it, we sustain a no-evidence challenge only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810, 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id*. at 819. When reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and weigh all the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## A.    Intervenor's Billing Statements

The City first argues that the attorney's fees incurred in relation to the administrative phase of the condemnation proceeding, in which three special commissioners were appointed to determine a value for the property sought to be condemned, were not recoverable. Thus, the City contends those fees should have been excluded from the award.

Section 21.019 permits the property owner to be awarded attorneys' fees incurred to the date of the hearing or judgment. TEX. PROP. CODE ANN. § 21.019(c) (West 2004). Although the appointment of the special commissioners is a separate phase of the judicial proceeding, they are appointed by the trial court only after the condemnation petition is filed. *Id*. at § 21.014(a). Section 21.019 does not contain any exclusion for attorney's fees incurred during that phase of the judicial proceeding, and we hold that the fees are recoverable under section 21.019(c). *See*

*McLennan & Hill Counties Techuacana Creek Water Control Dist. No. 1 v. Hennig*, 469 S.W.2d 590, 592-93 (Tex. Civ. App.—Waco 1971, no writ) (rejecting similar argument under prior statute).

**B.      Sufficiency of the Evidence**

- *Time and labor required, novelty and difficulty of the question presented, and the skill required to properly perform the legal service*

Luis Montano testified that he first received correspondence about the planned condemnation in December of 2004. This was shortly before the United States Supreme Court issued its decision in *Kelo v. City of New London*, 545 U.S. 469 (2005). The Court in *Kelo* broadly defined "public use," and upheld a proposed taking involving the transfer of property from one private party to another which would thereby bolster tax revenue. *See Western Seafood Co. v. United States*, 202 Fed. Appx. 670, 674-75 (5th Cir. 2006) (summarizing holding). A special legislative session was called in response to *Kelo*, and the Limitations on Use of Eminent Domain Act ("Act") was passed and codified at section 2206.001 of the Texas Government Code effective November 18, 2005. *See* TEX. GOV'T CODE ANN. § 2206.001 (West 2008); *see also Western Seafood Co.*, 202 Fed. Appx. at 677 (noting Act was passed in response to *Kelo*); *see generally* Adrianne Archer, *Restricting Kelo: Will Redefining "Blight" in Senate Bill 7 Be the Light at the End of the Tunnel*, 37 ST. MARY'S L.J. 795, 828-832 (2006) (discussing legislative response). Because the issues in the instant case raised concerns about whether the City desired to take the Montano Family's property to benefit another private landowner, the legal ramifications of *Kelo* and the Act were implicated. Therefore, the issues presented were novel.

Luis testified that he paid $38,000 to Lopez Peterson PLLC, which represented the Montano Family before the objections were filed to the special commissioners' findings, and that he still owed Lopez Peterson $18,000. The only evidence that Lopez Peterson's attorney's fees

were reasonable and necessary, however, came through a stipulation that the total amount Lopez Peterson billed the Montano family, $46,302.91, was reasonable and necessary.

Luis testified that he was present when at least six depositions were taken. Luis also testified that he reviewed numerous DVDs of city council meetings pertaining to the condemnation proceeding with his attorney, Richard Gonzalez. Luis also attended a meeting of the Laredo Independent School District with Gonzalez in an effort to gather information relating to the lawsuit. The trial was held in October of 2009, and Luis testified that the condemnation proceeding had been pending almost five years.

Gonzalez was hired by the Montano Family in December of 2004 or January of 2005. Gonzalez searched through city council minutes and DVDs of city council meetings to gather information regarding the condemnation proceeding. Gonzalez believed he had reviewed 38 DVDs, and watched some of the DVDs more than once. Gonzalez also discussed the DVDs with Luis. Gonzalez testified that he conducted a lot of legal research, prepared pleadings, and responded to a summary judgment motion. Gonzalez stated that he made numerous court appearances and prepared for and took countless depositions. Gonzalez also reviewed the deposition transcripts after they were prepared.

Gonzalez testified that a conservative estimate of the time he had spent on the case would be a minimum of six hours a week for 226 weeks, or 1,356 hours.[2] Gonzalez testified that his hourly rate was $250. Therefore, Gonzalez stated that $339,000 was a reasonable and necessary fee for his services. Gonzalez stated that he had been paid $35,000 by the Montano Family and

---

[2] During oral argument, the City's attorney repeatedly made reference to Gonzalez seeking attorney's fees for a period of time that overlapped the period of time during which the Montano Family was represented by Lopez Peterson. However, no testimony was elicited during the cross-examination of Gonzalez to establish that the 226 weeks overlapped with the period of time the Montano Family was represented by Lopez Peterson.

was owed over $300,000. Gonzalez testified that the Montano Family had agreed to pay him his attorney's fees.

On cross-examination, Gonzalez rejected the characterization of his fees as a "guesstimation," stating that his fee is what he knew to be the minimum amount of time that he spent on the case.[3] Gonzalez stated that he did not keep billing statements, but he had "thousands and thousands and thousands of pages" of documents that were accumulated in the case. Gonzalez stated that the documents encompassed six boxes which he narrowed down to three boxes for purposes of trial. Gonzalez stated that the amount of time he spent on the case was typical.

Adriana Benavides-Maddox assisted Gonzalez with the case. She testified that she had been paid $25,000 for her work until trial. Benavides-Maddox's hourly rate at the time she was retained was $200 per hour until trial, and she had worked about 120 hours before trial. She further testified that she had worked 12 hours a day on average since trial began because she arrived at the courthouse before the jury and continued to work to prepare for the next day of trial after the jury left. Benavides-Maddox stated that her fee for her trial work was $12,000. Benavides-Maddox testified that two lawyers were necessary for the work on the case because it was complex and novel. With two lawyers, each was able to prepare for different witnesses and to handle different legal aspects of the case such as the jury charge. On cross-examination, Benavides-Maddox testified that she has a billing system called Task that tracks her hours on a particular case; however, the City did not request her billing records through discovery.

---

[3] In response to counsel's question on cross-examination about whether Gonzalez usually billed his clients based on "guesstimations," Gonzalez stated, "This is not a guesstimation, Ms. Hale. It's what I know to be, at a minimum, the amount of time that I spent in this case."

- *Likelihood that the acceptance of employment precluded other employment by the lawyer*

Gonzalez testified that he had turned away other work because of the time and effort required by the Montano Family's case. In response to questioning on cross-examination, Gonzalez stated that he did not keep a list of the clients that he turned away.

- *Fee customarily charged in the locality for similar services*

Gonzalez testified that his hourly rate was a customary rate charged in the community or less than the customary rate. Gonzalez further testified that his hourly rate was reasonable for a lawyer in the community with his level of education, experience, and expertise.

- *Amount involved and results obtained*

George Royal Wright, a licensed appraiser, appraised the property's value in 2006 at $3,800,000, and in 2008 at approximately $4,000,000. The property is in a prime location in the Central Business District of Laredo, Texas, which has more developed commercial activities than other parts of Laredo, and is in close proximity to International Bridge No. 1 linking Laredo to Mexico.

The Montano Family prevailed in the action with the jury finding that the City intended to condemn the property for an unauthorized purpose.

- *Experience, reputation, and ability of the lawyer performing the services*

Gonzalez testified that he had been licensed to practice law since 1982. Gonzalez testified that he developed a practice niche specializing in litigation against local governing bodies in the 1990s because very few lawyers in Laredo were willing to take those cases. Gonzalez stated that the litigation is difficult and time-consuming. Gonzalez testified that the issues can be legally complex with complicated fact situations. On cross-examination, Gonzalez admitted that the Montano Family's case was the first eminent domain action he had handled;

however, he disagreed that eminent domain was different from other litigation against the government.

Benavides-Maddox testified that she has been licensed to practice law since 1999. She stated that she has been in private practice for six years and has experience in general civil litigation. Benavides-Maddox testified that she and Gonzalez had the experience and expertise to handle the case, noting that no other lawyers in Laredo sued municipalities.

Based on the foregoing testimony, we conclude the evidence is legally and factually sufficient to support an attorney's fee award in the amount of $422,302.91 ($46,302.91 for Lopez Peterson's hours, $339,000 for Gonzalez's hours, and $37,000 for Benavides-Maddox's hours). In his briefing and during oral argument, Gonzalez conceded that the attorney's fee award exceeded the testimony.[4]

An appellate court has the duty to reduce an excessive fee award. *Stukes v. Bachmeyer*, 249 S.W.3d 461, 470 (Tex. App.—Eastland 2007, no pet.). A court of appeals may exercise its power to suggest a remittitur when an appellant complains that there is insufficient evidence to support an award and the court of appeals agrees, but finds that there is sufficient evidence to support a lesser award. *Id.* We conclude there is sufficient evidence to support the lesser award of $422,302.91. Accordingly, we condition our affirmance of the award of attorney's fees through trial in this case on the Montano Family filing a remittitur of $23,697.09.

### APPELLATE FEES

Gonzalez testified that he had handled appeals to both the intermediate appellate courts and the Texas Supreme Court. Gonzalez stated that a reasonable and necessary fee for appealing to an intermediate appellate court would be $50,000 and a reasonable and necessary fee for an

---

[4] The appellees' brief states, "The jury apparently awarded $14,000.00 more than what the testimony showed." Apparently, the appellees were relying on Luis's testimony regarding Lopez Peterson's fees rather than the stipulation.

appeal to the Texas Supreme Court would be $30,000-$60,000. Benavides-Maddox testified that the fee for her participation in an appeal to the intermediate court would be $15,000 and the fee for her participation in an appeal to the Texas Supreme Court would be $5,000 to $10,000 plus an additional $30,000 for filing a brief in the Texas Supreme Court. The jury awarded $55,000 in attorney's fees for an appeal to the court of appeals and $80,000 for an appeal to the Texas Supreme Court.

As previously noted, section 21.019(c) provides for an allowance of attorney's fees "incurred by the property owner to the date of the hearing or judgment." TEX. PROP. CODE ANN. § 21.019(c) (West 2004). The City argues that attorney's fees incurred for services after the date of the hearing or judgment are not recoverable under section 21.019. Thus, the City contends no attorney's fees are recoverable for services pertaining to appellate work.

The Texas Supreme Court addressed the recovery of appellate attorney's fees under section 21.019(c) in *FKM P'ship, Ltd. v. Board of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619 (Tex. 2008). In that case, the condemning authority amended its condemnation petition and reduced its proposed acquisition from 47,008 square feet of land to 1,260 square feet. *Id*. at 624-25. The trial court granted the landowner's motion to dismiss which was based on jurisdictional grounds. *Id*. at 625. In the motion, the landowner argued the trial court lacked jurisdiction because the condemning authority had not passed a board resolution authorizing the condemnation of the smaller tract and the special commissioners had only considered the value of the larger tract. *Id*. at 625. In its order granting the motion, the trial court stated that the landowner was entitled to recover: (1) all fees and expenses under section 21.109(c); and (2) damages for temporary possession under section 21.044. *Id.* The trial court set a jury trial on the issue of the fees, expenses, and damages to be awarded. *Id.* Based on the jury's findings with

regard to attorney's fees, the trial court awarded the landowner $495,642.05 in attorney's fees for preparation and trial and $150,000 in attorney's fees for appeal. *Id.* The court of appeals reversed, holding the trial court erred in dismissing the suit for lack of jurisdiction and remanded the cause for a determination of the fees and expenses the landowner incurred in relation to the larger tract which was no longer being condemned. *Id.*

Although the Texas Supreme Court held that the trial court erred in dismissing the proceeding for lack of jurisdiction because the condemning authority had the right to amend its pleading, the court also held that the amended petition effected a voluntary dismissal of the claim for the larger tract, entitling the landowner to attorney's fees under section 21.109(c). *Id.* at 625-37. The Texas Supreme Court further held, "By the plain language of the statute, a landowner is not entitled to recover fees and expenses, such as appellate fees incurred after the dismissal hearing." *Id.* at 637. The case was remanded to the trial court for further proceedings, and the court noted, "The proceedings following remand should be consistent with this opinion." *Id.* at 638; *see also City of Austin v. Whittington*, No. 03-07-00729-CV, 2010 WL 567153, at *3 (Tex. App.—Austin Feb. 18, 2010, pet. granted) (citing *FKM P'ship, Ltd.* and noting landowners conceded that their fee award should not have included attorney's fees for appeals).

Based on the holding in *FKM P'ship, Ltd.*, we reverse the portion of the trial court's judgment awarding the Montano Family conditional appellate attorney's fees and render judgment that the Montano Family is not entitled to recover appellate attorney's fees.

### REPORTER'S RECORD EXPENSES

The City requested a partial reporter's record in this appeal. *See* TEX. R. APP. P. 34.6(c). After a single volume of a reporter's record was filed from an April 11, 2010 hearing on a motion to compel, this court set a deadline for appellant's brief, believing the appellate record

was complete. However, this court later learned that the Montano Family had designated additions to the reporter's record. *Id*. at 34.6(c)(3). The City contested the necessity of the additions, and the trial court held a hearing on the necessity of the additions. *Id*. at 34.6(c)(3) (providing that if trial court determines additional designations are unnecessary, trial court may order the other party to pay the costs for the preparation of the unnecessary additions). The trial court found certain additions necessary and certain additions unnecessary. Rule 34.6(c)(3) states that the trial court's findings do not affect this court's power to tax costs differently. *Id*.

In its final issue, the City requests that this court tax the cost of the additional records that the trial court determined to be necessary against the Montano Family. These additions consist of five volumes of the reporter's record that the trial court determined were necessary and two additional volumes of hearings pertaining to the entry of judgment.

This court used the two volumes of the reporter's records of the hearings pertaining to the entry of judgment in resolving the City's motion to strike the intervenor's brief. Accordingly, the costs of those records are properly taxed against the City.

With regard to the remaining five volumes, this court used the testimony contained in two of those volumes in resolving the sufficiency issue presented on appeal. Those volumes include the testimony of Wright, Luis, Gonzalez, and Benavides-Maddox summarized in this opinion. Interestingly, the City itself cites portions of those volumes in its brief. Accordingly, the costs of those records are properly taxed against the City.

The remaining three volumes are records of pre-trial hearings, including a hearing on a motion in limine. Although these records are evidence of court appearances made by the attorneys for the Montano Family, the records were not presented to the jury as evidence for the jury to consider in determining a reasonable and necessary attorney's fee. Accordingly, these

remaining three volumes were not necessary for this appeal, and the total cost of those three volumes, $1,176, is taxed against the Montano Family.

## CONCLUSION

The portion of the trial court's judgment awarding appellate attorney's fees is reversed, and judgment is rendered that no appellate attorney's fees are recoverable. The portion of the trial court's judgment awarding attorney's fees through trial is affirmed, conditioned on a remittitur of attorney's fees in the amount of $23,697.09. If this remittitur is not filed within twenty days from the date of this opinion, the trial court's judgment as to attorney's fees will be reversed, and the issue of attorney's fees will be remanded to the trial court for a new trial. *See* TEX. R. APP. P. 46.3. With the exception of the $1,176 for the three volumes of the reporter's record to be taxed against the Montano Family, costs of the appeal are taxed against the City.

Catherine Stone, Chief Justice