

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00046-CR

JONATHAN EARL EPPS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2017F00133

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

A Cass County jury convicted Jonathan Earl Epps, Jr., of repeated violation of a protective order, a third-degree felony.[1] Epps pled true to the State's two enhancement allegations and was sentenced to fifty-five years' imprisonment. On appeal, Epps argues that the evidence is legally insufficient to support his conviction, the jury charge was erroneous, and the trial court erred in overruling his motion for new trial in the absence of a hearing.

We conclude that (1) legally sufficient evidence supports Epps' conviction, (2) Epps was not harmed by any jury charge error, and (3) a hearing was not required on Epps' motion for new trial. Accordingly, we affirm the trial court's judgment.

*(1)     Legally Sufficient Evidence Supports Epps' Conviction*

      *a.     Standard of Review*

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13

---

[1]*See* Act of May 7, 2013, 83d Leg., R.S., ch. 96, 2013 Tex. Gen. Laws 194, 194 (amended 2015, 2017) (current version at TEX. PENAL CODE § 25.072(e)).

(Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Epps was indicted for repeated violation of a protective order under a prior version of Section 25.072. *See* Act of May 7, 2013, 83d Leg., R.S., ch. 96, 2013 Tex. Gen. Laws 194, 194 (amended 2015, 2017). Under that statute, a person committed an offense if, "during a period that [was] 12 months or less in duration, the person two or more times engage[d] in conduct that constitute[d] and offense under Section 25.07." *Id.* In turn, Section 25.07 criminalizes the violation of a protective order entered under Chapter 85 of the Texas Family Code if a person communicates "in any manner with the protected individual" if the protective order "prohibits any communication with a protected individual." TEX. PENAL CODE ANN. § 25.07 (West Supp. 2018).

The Texas Penal Code does not define the term "communicate." "Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *cf.* TEX. CODE CRIM. PROC. ANN. art. 3.01 (West 2015) ("All words, phrases and terms used in this Code are to be taken and

3

understood in their usual acceptation in common language, except where specially defined.").

Reviewing courts may not employ definitions that are "more restrictive than the jurors themselves were legally entitled to use." *Vernon*, 841 S.W.2d at 409. Black's Law Dictionary defines communication as the "interchange of messages or ideas by speech, writing, gestures, or conduct." *Communication*, BLACK'S LAW DICTIONARY (10th ed. 2014). We will employ this definition of the term "communicate" in our analysis.

Here, it is undisputed that the 280th Judicial District Court of Harris County, Texas, entered a protective order on March 31, 2016, in a case filed by Hettie Franklin against Epps, after the court found that family violence had occurred and was likely to occur again in the future. The protective order, entered pursuant to Chapter 85 of the Texas Family Code, prohibited Epps from having any contact with Franklin, except through her attorney or appointed advocate. The order also expressly stated that it was to continue for a period of two years.

The State alleged that Epps repeatedly violated the protective order. Its indictment alleged

> that on or about . . . the 21st day of February, 2017, and the 10th day of April, 2017, . . . JONATHAN EARL EPPS JR, did then and there during a continuous period that was twelve months or less in duration, namely, from on or about February 21, 2017 through April 10, 2017, engage in conduct two or more times that constituted an offense under Section 25.07 of the Texas Penal Code.

The indictment further specified that, on or about February 21, March 9, April 8, and April 10, 2017, Epps intentionally and knowingly violated

> the terms of an order issued by Judge Lynn Bradshaw-Hull of the 280th Judicial District Court of Harris County, Texas, on the 31st day of March, 2016, under authority of Chapter 85 of the Texas Family Code, by intentionally or knowingly communicating with Hettie Franklin, a protected person, by face to face communication, and which conduct was the violation of an order that prohibited any communication with a protected individual.

4

Thus, under the hypothetically correct jury charge, the State was required to prove that Epps intentionally or knowingly violated the protective order two or more times between approximately February 21 through April 10, 2017, by communicating in any manner with Franklin, a protected individual.

b.      *The Evidence at Trial*

Sandra Chapa, a patrol officer with the Atlanta Police Department (APD), testified that she was dispatched on February 21, 2017, to Franklin's aunt's home during an investigation of an alleged theft. Chapa found both Epps and Franklin in the home. According to Chapa, Franklin's aunt reported that Franklin and Epps had been living there together. The aunt, who owned the home, wished for Franklin and Epps to move out. Chapa's confirmation of Epps' and Franklin's identities led an APD dispatcher to report the existence of the protective order prohibiting Epps from contacting Franklin. Chapa testified that Epps and Franklin both admitted that the Harris County court had entered a protective order, but "expressed that they thought the judge had lifted it." On confirming the violation of a protective order, Chapa placed Epps under arrest. Chapa also warned Epps that he was to have no contact with Franklin as long as the protective order was in effect.

Chapa's warning did not deter Epps; the record demonstrated that Epps had contact with Franklin three additional times. First, Chapa testified that she found Epps, after his release from jail, in the same vehicle with Franklin on March 9, 2017, at the scene of a traffic stop. Accordingly, Epps was again arrested for violation of a protective order.

5

Second, on April 8, 2017, Britton Patterson, another APD officer, testified that she was dispatched to a new residence occupied by Franklin and found her "crying and real distraught." According to Patterson, Franklin reported that Epps had pushed her, but Epps was not arrested on that day since he was not present when Patterson arrived.

Epps' third arrest for violating the protective order occurred on April 10, 2017, after Chapa witnessed him in the same home with Franklin.

Tommy Hawley, an investigator with the APD, testified that Epps attempted to escape through the back door on this occasion, but was soon apprehended. According to Hawley, Epps knew he was violating the protective order. Chapa testified that Epps and Franklin were still living together. Ernest Wade Cutchall, a patrol officer with the APD, testified that Epps' reported address during the book-in procedure was Franklin's address.

Franklin testified that, as of February 21, 2017, Epps was aware of the existence of the protective order, but did nothing to abide by it. Instead, Epps asked Franklin on several occasions to "get the protective order dropped." Franklin confirmed that she was in a relationship with Epps, that he was with her in person on March 9 and April 8 and 10, and that she desired for the protective order to remain in effect. Franklin also testified that she had written to Epps while he was in jail and that Epps had called her on numerous occasions.

*c.     Analysis*

Epps challenges only the mens rea and the communication elements of the offense. We find that the evidence was legally sufficient to support the jury's finding that Epps intentionally or

6

knowingly communicated with Franklin, thereby violating the protective order, two or more times within the requisite time period.

Initially, Epps argues there was no evidence that he was aware of the protective order entered against him because the order recited that Epps was not present at the hearing in which it was granted. Therefore, Epps complains that he could not have intentionally or knowingly violated the protective order. However, testimony from Franklin and Chapa demonstrated that Epps was aware of the protective order, at the latest, by February 21, 2017.[2] Thus, we turn to the question of whether the evidence was legally sufficient to establish repeated violations of the protective order after February 21.

Here, Epps argues that there was no evidence of any face-to-face communication as alleged in the State's indictment.[3] We disagree. The record demonstrated that, after February 21, Epps and Franklin were found in the same car at the same time, were living together for at least one month, and were involved in an altercation in which Epps pushed Franklin. Franklin also testified that she and Epps were in a relationship. In drawing reasonable inferences, a jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). From such knowledge and common experience, the jury could have found that Epps and Franklin

---

[2]Additionally, the assistant district attorney for Harris County certified that the protective order was mailed to Epps' last known address.

[3]Essentially, Epps argues that there was a variance between the indictment and proof at trial, but the record demonstrates otherwise.

would not have been in the circumstances in which they were found—living together, sharing a vehicle, and arguing in person—without communicating. Accordingly, from the evidence presented at trial, which we view in the light most favorable to the verdict, we conclude that the jury could rationally infer that Epps engaged in the in-person interchange of messages or ideas by speech, gestures, or conduct with Franklin on two or more occasions after February 21.

Because we find the evidence legally sufficient to support the jury's verdict of guilt, we overrule Epps' first point of error.

(*2*)     *Epps Was Not Harmed by any Jury Charge Error*

Further, Epps argues that the jury charge erroneously (1) authorized a conviction based on two or more communications of any kind instead of face-to-face communication as specified in the State's indictment and (2) omitted an instruction on the lesser-included offense of violation of a protective order. We reject both arguments.

a.     *Standard of Review*

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d

8

915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id*. (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

The level of harm necessary to require reversal due to jury charge error is dependent on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Direct evidence of harm is not required to establish egregious harm. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

### b. *Epps Was Not Egregiously Harmed by the Omission of the Phrase "Face-to-Face Communication"*

Epps argues that the jury charge authorized conviction on manner and means not alleged. Specifically, because the indictment had alleged that Epps made face-to-face communication with Franklin, Epps argues that the charge's omission of the phrase was erroneous because it did not require a finding on the manner and means alleged.

Yet, Epps does not establish that the trial court was required to include the phrase. The ensuing subparagraph of former Section 25.072 provided that, "[i]f the jury is the trier of fact, members of the jury must agree unanimously that the defendant, during a period that is 12 months or less in duration, two or more times engaged in conduct that constituted an offense under Section 25.07." Act of May 7, 2013, 83d Leg., R.S., ch. 96, 2013 Tex. Gen. Laws 194, 194 (amended 2015, 2017). The statute "prescribe[s] the commission of a certain number of acts within a particular category," but not how those acts must occur. *Diaz v. State*, 549 S.W.3d 896, 899–900

9

(Tex. App.—Amarillo 2018, no pet.). Because the jury need not agree on the manner and means of the offense, the manner and means appears inconsequential in a prosecution for repeated violation of a protective order. *See id.*; *Hernandez v. State*, 556 S.W.3d 308, 313 (Tex. Crim. App. 2017) (citing *Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012)). In any case, even assuming error, Epps cannot establish harm.

Here, because Epps did not object to the charge, we will not reverse unless the record shows the error resulted in egregious harm, such that he did not receive a fair and impartial trial. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)); *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In making this determination, we review "the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole." *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171).

Here, the jury charge tracked the language of former Section 25.072. As previously stated, the evidence demonstrated that Epps repeatedly violated the protective order by engaging in face-to-face communications with Franklin on several occasions, and Epps' counsel did not argue otherwise.[4] Accordingly, we conclude that no egregious harm is shown. We overrule this point of error.

---

[4]Instead, Epps' position at trial was that Franklin was the one initiating contact with Epps.

10

*c.*     *Epps Was Not Entitled to a Charge on a Lesser-Included Offense*

Epps also argues that the trial court erred in denying his requested lesser-included-offense instruction of simple violation of a protective order. "We use a two-step analysis to determine if a defendant is entitled to a lesser-offense instruction." *Ritcherson v. State*, No. PD-0021-17, 2018 WL 6519277, at \*2 (Tex. Crim. App. Dec. 12, 2018) (citing *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993)). "First, we compare the statutory elements of the alleged lesser offense and the statutory elements and any descriptive averments in the indictment." *Id.* (citing *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010)). "Second, there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense." *Id.* (citing *Bullock*, 509 S.W.3d at 925; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006)). Here, it is undisputed that the first element is met. However, the trial court denied Epps' request after concluding that Epps failed under the second requirement to present any evidence from which the jury could find Epps guilty of only one violation of a protective order. We agree.

The second requirement "is met if there is (1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the offense and raises the lesser offense." *Id.* (citing *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex. Crim. App. 1992)). "The evidence raising the lesser offense must be affirmatively in the record." *Id.*

Epps' argument on this point is unclear. Epps claims, "Only Hettie Franklin testified to any communication between Appellant and herself . . . and never testified that any of the

11

communication was face to face." Yet, testimony from Chapa, Patterson, and Hawley also demonstrated that Epps violated the protective order two or more times through, among other things, face-to-face communication. Epps also argues that Franklin testified only that one of the violations occurred in Cass County, but testimony from several of the APD officers demonstrated that the other communications in violation of the protective order made by Epps occurred within the APD's jurisdiction in Cass County. In sum, Epps makes no real effort to argue the second requirement necessary to warrant the inclusion of a lesser-included-offense instruction. Thus, we overrule this point of error.

*(3)    A Hearing Was Not Required on Epps' Motion for New Trial*

Finally, Epps argues that the trial court erred in failing to hold a hearing on his motion for new trial. In his motion, Epps alleged, among other things, that members of the jury committed juror misconduct by considering parole law and the application of good-time credit.[5] Epps

---

[5]The trial court issued the following charge to the jury:

Parole and Good Conduct Time

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

. . . .

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this

12

attached the purported affidavits of two jurors, Dazzman Benjamin and Eddie Charles White, which stated that they had increased the punishment they originally intended to assess after considering the application of good-conduct time.

A trial court's ruling denying a motion for new trial is reviewed for an abuse of discretion. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). In conducting a review of a trial court's ruling, we may not substitute our judgment for that of the trial court, and we review the record to determine whether the trial court's decision was arbitrary or unreasonable. *Id.* A trial court abuses its discretion in denying a motion for a new trial "only when no reasonable view of the record could support the trial court's ruling." *Id.*

The right to a hearing on a motion for new trial is not absolute. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). A defendant is entitled to a hearing on a motion for new trial when he has raised grounds that are not determinable from the factual record. *Smith v. State*, 286 S.W.3d 333, 338–39 (Tex. Crim. App. 2009); *Reyes*, 849 S.W.2d at 815–16. For a defendant to show he could reasonably be entitled to relief on matters that are not determinable from the record, he must support the motion with an affidavit setting out the factual basis for his claim. *Smith*, 286 S.W.3d at 339. "Implicit within this rule is the requirement that the purported evidence contained in the affidavit be competent and admissible," for if it is not, "it can hardly illustrate the truth of what is being said." *Bjorgaard v. State*, 220 S.W.3d 555, 558 (Tex. App.—Amarillo 2007, pet. dism'd).

particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

An "affidavit" is defined as a "statement in writing of fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX. GOV'T CODE ANN. § 312.011(1) (West 2013). "The absence of the notarial seal renders an affidavit defective." *Venable v. State*, 113 S.W.3d 797, 800 (Tex. App.—Beaumont 2003, pet. ref'd). Because the purported juror affidavits lack a notarial seal, they are not competent and admissible affidavits. They also cannot be considered as unsworn declarations because they are missing the required jurat specifying the juror's date of birth and address. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(d) (West Supp. 2019).

Moreover, "[a] juror's affidavit states reasonable grounds only if the matter discussed in the affidavit would be admissible in a subsequent hearing on the motion for new trial." *Dunkins v. State*, 838 S.W.2d 898, 899 (Tex. App.—Texarkana 1992, pet. ref'd). In proving juror misconduct in a motion for new trial, a defendant is limited by Rule 606(b) of the Texas Rules of Evidence, which provides,

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

TEX. R. EVID. 606(b)(1); *see Fino v. State*, No. 05-17-00169-CR, 2018 WL 3829781, at *14 (Tex. App.—Dallas Aug. 13, 2018, pet. ref'd) (mem. op., not designated for publication).[6] There are only two exceptions to the prohibition of juror testimony under Rule 606(b)(1). A juror may testify

---

[6]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

on the issues of whether any outside influence was improperly brought to bear on him or to rebut a claim that he was not qualified to serve. TEX. R. EVID. 606(b)(2). Neither exception is argued in this case.[7] We find that the affidavits constituted testimony about the juror's mental processes concerning the verdict.

In sum, the purported juror affidavits constituted neither proper affidavits nor proper unsworn declarations. Additionally, the affidavits constituted juror testimony prohibited by Rule 606(b) of the Texas Rules of Evidence. Consequently, we find no abuse of discretion in the trial court's failure to hold a hearing on Epps' motion for new trial.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     February 19, 2019
Date Decided:       February 28, 2019

Do Not Publish

---

[7]A juror's discussion as to the application of the parole law to the defendant's sentence does not constitute an outside influence. *Hines v. State*, 3 S.W.3d 618, 623 (Tex. App.—Texarkana 1999, pet. ref'd).