99 CENTS ONLY STORES, a California corporation, Plaintiff,

v.

LANCASTER REDEVELOPMENT AGENCY, a public entity; and City of Lancaster, a public entity, Defendants.

No. CV 00–07572SVW(AJWx).

United States District Court, C.D. California.

June 26, 2001.

Regina L. Cobb, Demetriou Del Guercio Springer & Francis, Los Angeles, CA, George M. Soneff, Berger & Norton, Santa Monica, CA, Gideon Kanner, Gideon Kanner Law Offices, Burbank, CA, Russell F. Wolpert, City of Commerce, CA, for plaintiff.

Allison Elizabeth Burns, Douglas J. Evertz, David R. McEwn, Stradling Yocca Carlson & Rauth, Newport Beach, CA, for defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILSON, District Judge.

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

## I. *INTRODUCTION*

Plaintiff 99 Cents Only Stores ("99 Cents") alleges that Defendants Lancaster Redevelopment Agency and the City of Lancaster (collectively "Lancaster") have threatened to take its property in violation of the Fifth Amendment and, accordingly, seek equitable relief under 42 U.S.C. § 1983. In particular, 99 Cents asks the Court to enjoin Lancaster from initiating condemnation proceedings against it on the ground that any such condemnation would violate the "public use" provision of the Takings Clause contained in the Fifth Amendment. For the reasons set forth below, the Court grants 99 Cents' motion for summary judgment and, accordingly, issues an injunction as described herein.

## II. *FACTUAL SUMMARY*

### A. *The Development of the Power Center*

In 1983, pursuant to California's Community Redevelopment Law (the "CRL"), Lancaster enacted an ordinance establishing the Amargosa Redevelopment Project Area (the "Project Area") and adopted a Redevelopment Plan (the "Amargosa Plan" or the "Plan") for the revitalization of that area. As it was required to do by the CRL, Lancaster made specific findings in the Amargosa Plan describing the blighted conditions existing in the Project Area at that time. According to those findings, the Project Area was then plagued by inadequate public improvements and facilities, faulty subdivision planning, and flood hazards. The Amargosa Plan also conferred on Lancaster the power of eminent domain necessary to condemn any blighted real property. Pursuant to the CRL, those condemnation powers were set to expire in 1995, unless the Plan was expressly amended to extend them beyond that year.

In 1988, Lancaster began plans to develop a regional shopping center known as the Valley Central shopping center. The cornerstone of that center was to be a large retail shopping area called the "Power Center," which would house so-called "anchor" businesses like Costco Wholesale Corporation and Wal–Mart. Costco, in fact, moved into the Power Center in 1988 and was involved in the continued planning and development of the Power Center. The Power Center was completed in 1991, and all adjoining public roads, infrastructure, and facilities were completed by 1993. The Power Center is currently occupied by large retail stores like HomeBase, Wal–Mart, Circuit City, Costco, and 99 Cents.

In 1994, Lancaster amended the Amargosa Plan to extend the number of years the city could utilize property tax incre-

ment funds and to achieve other planning purposes. Notably, however, Lancaster did not extend its eminent domain powers, nor did it make any new blight findings, even though the California legislature had revised the CRL's definition of blight in 1993. The next year, in 1995, Lancaster's condemnation powers expired under the terms of the Plan. A year and a half later, in March of 1997, Lancaster renewed its condemnation rights by amending the Amargosa Plan a second time. Again, though, Lancaster made no new evidentiary findings of blight. Instead, it merely relied on its prior 1983 findings.

As for the Power Center itself, it had become the highest quality commercial retail property in Lancaster and one of the most prestigious shopping areas in the city. In fact, it is promoted on Lancaster's official web-site as a redevelopment "success story" and is the only shopping center in Lancaster that has a regional draw for customers.

## B. *99 Cents and Costco*

In 1998, 99 Cents moved into a vacant piece of property located next to Costco and entered into a 5–year lease with the property owner of the Power Center, Burnham Pacific. Under the lease, 99 Cents had the option to extend its leasehold interest beyond 2003 for an additional 15 years. In its first full year of operation, 99 Cents' sales were in excess of $5 million. In a candid admission, Lancaster has stated that it "loves" 99 Cents because of the significant tax revenues generated by the store.

Almost immediately after 99 Cents moved into the Power Center, Costco advised Burnham Pacific and Lancaster of its need to expand the size of its Lancaster operations. Costco threatened to relocate in the City of Palmdale unless Lancaster provided Costco with additional space in the Power Center. Costco, Lancaster, and Burnham Pacific began negotiating options by which Costco could expand its store and remain within the city of Lancaster. Significantly, Burnham Pacific advised Lancaster that "the most efficient use of [Costco's] property would be an expansion to the south of their existing facility behind the 99¢ Only Store." Costco, however, demanded that it be allowed to expand into the space being occupied by 99 Cents.

Viewing Costco as a so-called "anchor tenant" and fearful of Costco's relocation to another city, Lancaster began negotiating with Burnham Pacific for the acquisition of the property on which 99 Cents was located. To that end, Lancaster approved a Disposition and Development Agreement ("DDA") in September of 1999, by which Lancaster was required to use its best efforts to purchase that property from Burnham Pacific and relocate 99 Cents. 99 Cents, however, was never made a party to these discussions. Ultimately, Lancaster and Burnham Pacific were unable to negotiate a mutually acceptable deal, and Lancaster therefore decided to acquire Burnham Pacific's property through a "friendly" eminent domain proceeding. Specifically, Lancaster proposed to purchase from Burnham Pacific the property on which 99 Cents was located for approximately $3.8 million, relocate 99 Cents, and then sell the property to Costco for the nominal price of $1.00.

Thereafter, on or about May 25, 2000, Lancaster offered to purchase 99 Cents' leasehold interest for the sum of $130,000, plus additional unspecified amounts to compensate 99 Cents for the loss of goodwill and the costs of relocation. 99 Cents rejected the offer. Through a series of public hearings, Lancaster proposed Resolutions 21–00 and 22–00 (the "Resolutions of Necessity"), which authorized the condemnation of the real property in which 99 Cents held its leasehold interest. The

Resolutions of Necessity contained no findings of blight generally, no findings that the Power Center was blighted, nor any findings that the property on which 99 Cents was located was blighted in any way. After the Resolutions of Necessity were passed on June 27, 2000, this lawsuit immediately followed.

## III. *PROCEDURAL HISTORY*

Less than two months before this case was set for trial, Lancaster rescinded the Resolutions of Necessity on December 12, 2000. In addition, three days later, Lancaster terminated the DDA with Costco. Most recently, on March 26, 2001, Lancaster has informed the Court that it "has identified and acquired real property with the intent to transfer it to Costco." This property is not located in the Power Center. As of March 26, 2001, Lancaster had begun negotiating a second DDA with Costco by which title to the newly acquired property would be transferred to Costco. To date, however, the Court has received no updated information as to the status of those negotiations.

On January 22, 2001, Lancaster moved the Court to dismiss 99 Cents' complaint on the ground that it had been rendered moot by Lancaster's rescission of the Resolutions of Necessity and its termination of the original DDA with Costco. However, Lancaster expressly refused to stipulate that it would not later attempt to condemn 99 Cents' real property interest if the Court were to dismiss this action. The Court therefore rejected Lancaster's mootness argument. Now, without invitation by the Court, Lancaster has filed a motion for summary judgment, once again asserting that this case is moot.

99 Cents counters that the Court may still entertain its action because there is a reasonable likelihood that Lancaster will initiate condemnation proceedings against it in the future unless the Court enjoins Lancaster accordingly. Furthermore, 99 Cents itself has moved for summary judgment on the ground that Lancaster's efforts to condemn its leasehold interest constitute an unconstitutional taking in violation of the Fifth Amendment. Specifically, 99 Cents contends that Lancaster's attempt to condemn its property interest violates the "Public Use" clause of the Fifth Amendment because such condemnation would serve no purpose other than to appease a purely private entity, Costco.

## IV. *DISCUSSION*

### A. *Mootness*

■■■ Mootness is a jurisdictional issue that derives from the requirement of a case or controversy under Article III of the United States Constitution. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 120 S.Ct. 693, 703–04, 145 L.Ed.2d 610 (2000). It is well established, however, that a case is not rendered moot where, as here, a defendant voluntarily ceases the allegedly unlawful activity in response to a lawsuit but is otherwise free to return to it any time. *See Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir.1994). "Only if there is no reasonable expectation that the illegal action will recur is such a case deemed moot." *Id.* at 1510 (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). The burden of demonstrating mootness "is a heavy one." *County of Los Angeles v. Van Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979).

■■■ Indeed, to establish mootness, the defendant bears the burden of showing that "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1238 (9th Cir.1999) (citation omitted and alteration in original). Lan-

caster has not sustained that burden here. According to Lancaster, there is no reasonable basis to believe it will re-initiate condemnation proceedings against 99 Cents because Lancaster has rescinded the Resolutions of Necessity, terminated the original DDA with Costco, and purchased property for a proposed Costco relocation. None of these facts, however, renders the present case moot.

 First, the mere repeal of a law is not, by itself, sufficient grounds to make a case moot. *See, e.g., City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (repeal of city ordinance did not render challenge to ordinance moot where city was likely to reenact ordinance after completion of litigation). The fact that Lancaster's repeal of the Resolutions of Necessity came only in the wake of 99 Cents' lawsuit is strong evidence that Lancaster might simply reenact the resolutions upon the completion of this litigation. *See Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 854 (9th Cir.1985). The mere termination of the original DDA with Costco is also of no moment. Lancaster can simply enter into a new DDA at any time, as evidenced by the fact that it is currently negotiating a second DDA with Costco.

As for Lancaster's present intention to relocate Costco, it is just that—an intention, not a legal commitment. It bears emphasizing in this regard that throughout the course of this litigation, Lancaster has persistently refused to enter into any stipulation agreeing not to condemn 99 Cents' leasehold interest at Costco's behest. If, in fact, Lancaster intends to physically relocate Costco *outside* of the Power Center and *away* from 99 Cents, there is no reason why Lancaster could not agree to such a stipulation. Its refusal to do so

weighs heavily against a finding of mootness. *See LSO Ltd. v. Stroh,* 205 F.3d 1146, 1155 (9th Cir.2000) (observing that government's failure to disavow future application of challenged provision gives substance to plaintiff's fears). Moreover, Lancaster's naked assertion that it has no plans to initiate eminent domain proceedings against 99 Cents for the sole benefit of Costco is made suspect by the fact that it continues to insist it is within its absolute right to do so.

Accordingly, the Court cannot conclude that 99 Cents' request for injunctive relief is rendered moot solely because of Lancaster's voluntary cessation of condemnation proceedings. Absent conclusive proof that Lancaster will not again attempt to condemn 99 Cents' real property interest simply to allow Costco's expansion, the Court remains convinced that 99 Cents has a reasonable expectation that Lancaster will resume its condemnation efforts in the future at Costco's behest.[1] Thus, the Court must reach the merits of 99 Cents' complaint for injunctive relief.

### B. *Unconstitutional Taking Under the Fifth Amendment*

#### 1. *Public Use Clause*

 The Fifth Amendment to the Constitution proscribes the "taking" of private property "for public use without just compensation." U.S. Const., amend. V. The "public use" requirement is an explicit limit on the power of government to take private property for, as the Supreme Court has long recognized, a taking—even if justly compensated—must serve a legitimate public purpose. *See Thompson v. Consolidated Gas Corp.,* 300 U.S. 55, 80, 57 S.Ct. 364, 81 L.Ed. 510 (1937). A tak-

---

**1.** For this reason as well, Lancaster's standing argument similarly fails. *See LSO Ltd.,* 205 F.3d at 1155.

ing for purely private use is unconstitutional no matter the amount of "just compensation" that may be given. *See id;* *Armendariz v. Penman,* 75 F.3d 1311, 1320 (9th Cir.1996) (en banc). "A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void." *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 245, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

 To satisfy the Public Use Clause, a taking need only be "rationally related to a conceivable public purpose." *Id.* at 241, 104 S.Ct. 2321. "The 'public use' requirement is thus coterminous with the scope of a sovereign's police powers." *Id.* at 240, 104 S.Ct. 2321. Under the *Midkiff* standard, the Court must accept the avowed public purpose of Lancaster's condemnation efforts unless the public use findings are "palpably without reasonable foundation." *Richardson v. City & County of Honolulu,* 124 F.3d 1150, 1158 (9th Cir.1997) (quoting *Midkiff,* 467 U.S. at 241, 104 S.Ct. 2321). Even under such a deferential standard, however, public use is not established as a matter of law whenever the legislative body acts. While the scope of judicial scrutiny is narrow, "[t]here is, of course, a role for courts to play in reviewing a legislature's judgment of what constitutes a public use." *Midkiff,* 467 U.S. at 240, 104 S.Ct. 2321.

 No judicial deference is required, for instance, where the ostensible public use is demonstrably pretextual. *See Armendariz,* 75 F.3d at 1321. "If officials could take private property, even with adequate compensation, simply by deciding behind closed doors that some other use of the property would be a 'public use,' and if those officials could later justify their decisions in court merely by positing 'a conceivable public purpose' to which the taking is rationally related, the 'public use' provision of the Takings Clause would lose

all power to restrain government takings." *Id.* The sole question before the Court, therefore, is whether Lancaster has presented a valid or pretextual public use for its plan to condemn 99 Cents' leasehold interest.

### 2. *Lancaster's Alleged Public Use*

 In this case, the evidence is clear beyond dispute that Lancaster's condemnation efforts rest on nothing more than the desire to achieve the naked transfer of property from one private party to another. Indeed, Lancaster itself admits that the *only* reason it enacted the Resolutions of Necessity was to satisfy the private expansion demands of Costco. It is equally undisputed that Costco could have easily expanded within the Power Center onto adjacent property *without* displacing 99 Cents at all but refused to do so. Finally, by Lancaster's own admissions, it is was willing to go to any lengths—even so far as condemning commercially viable, unblighted real property—simply to keep Costco within the city's boundaries. In short, the *very reason* that Lancaster decided to condemn 99 Cents' leasehold interest was to appease Costco. Such conduct amounts to an unconstitutional taking for purely private purposes. *See, e.g., Armendariz,* 75 F.3d at 1321 (observing that forced sale of property for purpose of allowing private developer to acquire it at reduced price would not be for "public use").

 Yet, Lancaster nevertheless insists that the need to keep Costco satisfied is, by itself, sufficient for purposes of the Public Use Clause. Specifically, Lancaster posits that if the city were to lose Costco, a major "anchor" tenant, surrounding businesses would potentially suffer and eventually cause a "reestablishment of blight." However, Lancaster does not contend—nor did it ever find—that 99 Cents' property suffers from any *existing blight* or that

it is contributing to blight in the Amargosa Project Area in any way. Rather, the sole reason for condemning the property was Costco's unilateral demand for expansion into the space being occupied by 99 Cents. According to Lancaster, this is enough because the loss of Costco may cause what it calls "future blight" and preventing "future blight" is an adequate public use within the meaning of the Takings Clause.[2]

Lancaster's contention suffers from two fatal flaws. First, the notion of "future blight," a concept not discussed anywhere in California redevelopment law, made its first appearance in this litigation in direct response to 99 Cents' lawsuit. Aside from Lancaster's bald assertions in its briefs, there is simply no evidence in the record to suggest that so-called "future blight" was the actual reason underlying Lancaster's condemnation efforts at the time they were initiated. Nothing in Lancaster's Resolutions of Necessity, its DDA with Costco, or its public hearing statements relied upon *any* evidentiary findings of "future blight." The idea of future blight simply embodies Lancaster's current litigation position; it is not supported by any evidence in the record. Accordingly, the Court need not defer to Lancaster's belated statement of public use. *See Armendariz*, 75 F.3d at 1321 (deference to alleged legislative determinations of "public use" not appropriate where there is no record evidence of such determinations).

Furthermore, Lancaster's "public use" theory fails for another independent reason. Lancaster can point to no authority—and the Court could find none—supporting its novel legal proposition that the prevention of "future blight" is a legitimate public use under California redevelopment law. To the contrary, Lancaster's theory of "future blight" turns the Community Redevelopment Law (the "CRL") on its head.

"The purpose of the CRL is to provide a means of remedying blight *where it exists.*" *Beach–Courchesne v. City of Diamond Bar*, 80 Cal.App.4th 388, 95 Cal.Rptr.2d 265, 279 (2000) (emphasis added); *see also Friends of Mammoth v. Town of Mammoth Lakes Redev. Agency*, 82 Cal.App.4th 511, 98 Cal.Rptr.2d 334, 362 (2000) ("Determinations of blight are to be made on the basis of an area's existing use, not its potential use."). For this reason, the California Supreme Court has warned that "[p]ublic agencies and courts both should be chary of the use of the [redevelopment] act unless, ... there is a situation where the blight is such that it constitutes a real hindrance to the development of the city and cannot be eliminated or improved without public assistance. It never can be used just because the public agency considers that it can make a better use or planning of an area than its present use or plan." *Sweetwater Valley Civic Ass'n. v. City of National City*, 18 Cal.3d

---

**2.** Unable to argue that the property being currently leased by 99 Cents is blighted, Lancaster alternatively contends that its original 1983 evidentiary findings of blight are enough to condemn 99 Cents' leasehold interest over 17 years later without any renewed findings of blight. The parties dispute whether the CRL requires new blight findings prior to the exercise of eminent domain powers. The Court need not delve into such matters, however, to resolve the present case. Regardless of whether new blight findings are required by *California law*—an issue the Court expressly declines to address—the existence of such findings are relevant under *federal law* only insofar as they bear upon the Court's "public use" analysis under the Fifth Amendment. Independent of California law, Lancaster must present a valid public use within the meaning of the Takings Clause supporting its decision to condemn 99 Cents' property interest. Lancaster's failure to show that 99 Cents' leased property was blighted at the time of its attempted condemnation is determinative of 99 Cents' federal takings claim only. Its significance under California law is an issue the Court need not resolve.

270, 133 Cal.Rptr. 859, 555 P.2d 1099, 1103 (1976) (citation omitted).

Under Lancaster's theory, the very prosperity the Power Center is currently enjoying justifies its indiscriminate use of eminent domain powers because such prosperity could be erased at any time by "future blight." In Lancaster's view, then, no redevelopment site can ever be truly free from blight because blight remains ever latent, ready to surface at any time. Such an untenable position not only defies logic, it is contrary to California redevelopment law. If a city cannot even obtain redevelopment powers in the first place unless there is *existing blight* to be redressed, it necessarily follows that, if the city later acquires those powers, it cannot exercise them to condemn property that is *not blighted* solely to prevent some unidentifiable "future blight" that may never even materialize. In short, the notion of avoiding "future blight" as a legitimate public use is entirely speculative and wholly without support in California redevelopment law. As such, the Court concludes that Lancaster's condemnation efforts violate the Public Use Clause of the Fifth Amendment.

### C. Timeliness of 99 Cents' Challenge

Finally, Lancaster asserts that 99 Cents' complaint is time-barred by Cal. Health & Safety Code § 33500. In pertinent part, that section provides:

> No action attacking or otherwise questioning the validity of any redevelopment plan, or amendment to a redevelopment plan, or adoption or approval of such plan, or amendment, or any of the findings or determinations of the agency or the legislative body in connection with such plan shall be brought prior to the adoption of the redevelopment plan nor at any time after the elapse of 60 days from and after the date of adoption of the ordinance adopting or amending the plan.

Because 99 Cents did not challenge the Amargosa Plan within 60 days of its enactment in 1983, Lancaster argues that 99 Cents is barred from challenging it.

The Court need not tarry long with this argument because it is foreclosed by *Redevelopment Agency of the City of Fresno v. Herrold,* 86 Cal.App.3d 1024, 150 Cal.Rptr. 621 (1978). There, the court held that the 60–day limitations period in § 33500 applies only when a party is "attacking the legality of the redevelopment plan as originally adopted," not when he "is questioning the implementation of the plan with respect to his property." *Id.* at 625. Section 33500 is simply inapposite "[i]n cases like the present one where the challenge is not directed to the legality of the plan itself, but merely to its illegal implementation with respect to one parcel" of real property. *Id.*

### V. CONCLUSION

For all the foregoing reasons, the Court denies Lancaster's motion for summary judgment and grants 99 Cents' motion for summary judgment. Lancaster is hereby permanently enjoined from initiating eminent domain proceedings against the real property currently being occupied and leased by 99 Cents so long as the purpose or effect of such proceedings is to displace 99 Cents and permit the physical expansion of Costco onto that property. The Court cannot and will not issue any injunctive relief, however, as to any other grounds for condemnation under the Amargosa Plan that may potentially arise in the future, as such matters do not present an existing justiciable case or controversy.

IT IS SO ORDERED.