# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0303
════════════

HARRIS COUNTY FLOOD CONTROL DISTRICT AND HARRIS COUNTY, TEXAS,
PETITIONERS,

v.

EDWARD A. AND NORMA KERR, ET AL., RESPONDENTS

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════

JUSTICE LEHRMANN, joined by JUSTICE WILLETT, dissenting.

"[A]ware of the tendency of power to degenerate into abuse," Thomas Jefferson said that "our own country [has] secured its independence by the establishment of a constitution and form of government for our nation, calculated to prevent as well as to correct abuse." 8 THOMAS JEFFERSON, *To the Tammany Society of Columbian Order of the City of Washington (March 2, 1809), in* THE WRITINGS OF THOMAS JEFFERSON 156, 156–57 (1854). Recognizing the same need to set in stone the limits on government's capacity to invade certain essential rights, "Texans have adopted state constitutions to restrict governmental power." *Vinson v. Burgess*, 773 S.W.2d 263, 267 (Tex. 1989). In that sense, the constitutional bedrock underlying and supporting Texas's legal system assumes both the possibility that the government will abuse its authority and the wisdom of curtailing that abuse from the outset.

To that end, Article I, section 17 of the Texas Constitution contains an important limitation on the government's authority to invade Texans' property rights, providing that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made." In this case, the plaintiffs contend that the government effectuated a taking of their property without compensation by approving private development that resulted in the flooding of their homes. I join JUSTICE WILLETT's dissent because I agree that the circumstances of this case do not give rise to a cognizable takings claim. We also agree on the availability of compensation when a taking occurs, regardless of whether it is for public or private use. The latter point, while not crucial to today's dispute, warrants further discussion.

In compliance with Article I, section 17's restrictive mandate, we have consistently held that the State must justify its exercise of eminent domain by establishing that the taking will serve the public use. *See, e.g.*, *City of Austin v. Whittington*, 384 S.W.3d 766, 772 (Tex. 2012); *Davis v. City of Lubbock*, 326 S.W.2d 699, 702–03 (Tex. 1959). And quoting that same constitutional language—perhaps carelessly—we have also stated that an aggrieved property owner's claim for inverse condemnation is predicated on a showing that the government "intentionally took or damaged [private] property *for public use*, or was substantially certain that would be the result." *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005) (emphasis added); *see also State v. Hale*, 146 S.W.2d 731, 736 (Tex. 1941); *Gulf, C. & S.F. Ry. Co. v. Donahoo*, 59 Tex. 128, 133 (1883). However, we have never held that a taking that fails to satisfy the public-use element is not compensable. To the contrary, we have broadly held that when "the government takes private property without first paying for it, the owner may recover damages for inverse condemnation."

2

*Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004). Our inclusion of "public use" as an element of an inverse-condemnation claim—stated with no analysis in cases in which public use was not even at issue—should not be read to imply that an inverse-condemnation claimant would not be entitled to compensation if the property was taken for private use or the public-use requirement was not satisfied. *See, e.g.*, *City of Keller*, 168 S.W.3d at 808.

Moreover, the Court has explicitly addressed the propriety (or rather, the impropriety) of a private-use taking within other contexts. We did so with greatest clarity in *Maher v. Lasater*, 354 S.W.2d 923 (Tex. 1962). In that case, a property owner challenged the constitutionality of a commissioners court's order declaring a private road to be a public highway. *Id.* at 924. The order was made pursuant to a statute that permitted such a declaration if a road was deemed "of sufficient public importance." *Id.* at 925. The road at issue traversed the plaintiff's property from a public road and terminated at the boundary of his neighbor's land, which was used for grazing and pasturing. *Id.* at 924. As the road allowed access solely to the neighbor's land, the only public purpose served was "putting the products of the soil and the range of [the neighboring property] into the economy of the community." *Id.* at 926. As such, we held that the commissioners court's declaration violated the public-use requirement of the Takings Clause of the Texas Constitution, and that the taking was void because it was not of sufficient public importance.[1] *Id.* Implicit in this holding is a recognition that a taking for a private purpose would also be void.

---

[1] This decision fits squarely with the U.S. Supreme Court's view. *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public[-]use requirement; it would serve no legitimate purpose of government and would thus be void.").

3

But this precedent does not clearly address whether an inverse-condemnation plaintiff is entitled to compensation for a private taking. Unlike the holding in *Maher* that the government's declaration that the plaintiff's property was no longer private was void, the County cannot undo the water damage to the plaintiffs' homes in the case at hand. The proverbial bell has been rung. *Maher* addresses what Texas courts should do when title to property is taken outright for private use, but it fails to suggest a solution when a taking for private use damages property and reduces its value.

The need to address the compensability of a private taking is of particular importance in Texas because of the real possibility for such a taking to occur. By contrast, private takings are ostensibly a non-issue under the federal Constitution. The Sixth Circuit has stated that "[e]xamples of a taking for a private use tend to be esoteric . . . because all that is required for the taking to be considered for public use is a rational relationship to some conceivable public purpose." *Montgomery v. Carter Cnty., Tenn.*, 226 F.3d 758, 765 (6th Cir. 2000). As such, "[v]ery few takings will fail to satisfy that standard." *Id.* at 765–66. The Seventh Circuit has similarly characterized the burden of establishing a public use as "remarkably light." *Daniels v. Area Plan Comm'n of Allen Cnty.*, 306 F.3d 445, 460 (7th Cir. 2002).[2] That low bar was confirmed by the U.S. Supreme Court's ruling in *Kelo v. City of New London* that a taking "for public use" need only serve a public purpose. 545 U.S. 469, 480 (2005). As a result, the Court held that the taking of private property for the purpose of turning it over to private developers pursuant to a "carefully formulated . . . economic

---

[2] However, the burden is not insurmountable. Federal courts have enjoined condemnation proceedings on federal constitutional grounds because the purported reason for the proposed taking did not satisfy the public-use requirement. *See, e.g.*, *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123, 1130–31 (C.D. Cal. 2001).

development plan" satisfied the public-use requirement of the U.S. Constitution's Takings Clause. *Id.* at 483.

In what has widely been viewed as a response to *Kelo*, the Texas Legislature passed the Limitations on Use of Eminent Domain Act during a 2005 special session. Act of Aug. 16, 2005, 79th Leg., 2d C.S., ch. 1, § 1, 2005 Tex. Gen. Laws 1, 1–2; *see also W. Seafood Co. v. United States*, 202 F. App'x 670, 677 (5th Cir. 2006) (noting that the Act was passed in response to the *Kelo* decision). Codified as Texas Government Code section 2206.001, the Act precludes a government taking that (1) would confer "a private benefit on a particular private party through the use of the property," (2) was "merely a pretext to confer a private benefit," or (3) served purely "economic development purposes." The Act was amended in 2011 to make abundantly clear that the government may not condemn property if it "is not for the public use." Act of May 6, 2011, 82d Leg., R.S., ch. 81, § 2, sec. 2206.001, 2011 Tex. Gen. Laws 354, 354.

These provisions are aimed squarely at the deferential approach to the public-use requirement taken in federal courts. The Legislature has clearly exercised its prerogative to protect the property rights of Texans by narrowly defining public use. As a result, government actions that satisfy the federal public-use requirements could very well fail to satisfy such requirements in Texas. Because the Texas Legislature has opted to give greater protection to individual property rights, I disfavor any possible suggestion that a private-use taking might bar a property owner's right to recovery. The Constitution limits government power; it does not limit Texans' rights to obtain appropriate relief when that power is exceeded.

While a few cases from other jurisdictions addressing those states' constitutions have held that a taking for private use is not compensable, I find the reasoning in these cases unpersuasive. *E.g.*, *Clark v. Asheville Contracting Co.*, 342 S.E.2d 832, 839 (N.C. 1986); *Tulare Irrigation Dist. v. Lindsay-Strathmore Irrigation Dist.*, 45 P.2d 972, 990 (Cal. 1935). Such a holding improperly infers from the constitutionally placed burden on the government a reciprocal burden on property owners. Just as crucially, however, it ignores the Texas Constitution's goal of anticipating and preventing potentially abusive government action. Declaring that a private-use taking is not compensable would create a perverse set of incentives for State actors by encouraging takings that do not serve a public use. In doing so, it turns a public shield against improper government action into a sword to enable that same improper action. Put simply, it makes no sense to say that a property owner is entitled to compensation if the government does the right thing but not if it does the wrong thing.[3]

The danger to property owners presented here is real: a Texas court of appeals has already held that a private-use taking did not warrant compensation. *Osburn v. Denton Cnty.*, 124 S.W.3d 289, 293 (Tex. App.—Fort Worth 2003, pet. denied). But the Texas Constitution recognizes the fundamental importance of property rights. I write separately to underscore only that the Constitution's language should not be used to diminish the value of those rights.

---

[3] Such a conclusion would leave property owners injured by a private taking with little recourse, as sovereign immunity would bar alternative tort claims against the government. While *ultra vires* actions against a government official who acts without legal authority allow prospective relief, they offer little solace to a property owner faced with repairing damage that has already occurred. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373–77 (Tex. 2009) (discussing the strictly prospective nature of the relief in an *ultra vires* action).

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 12, 2015