[Cite as *Muskingum Cty. Convention Facilities Auth. v. Barnes Advertising Corp.*, 2025-Ohio-1864.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MUSKINGUM COUNTY | : | Hon. Andrew J. King, P.J. |
| CONVENTION FACILITIES | : | Hon. Kevin W. Popham, J. |
| AUTHORITY | : | Hon. David M. Gormley, J. |
| | : | |
| Plaintiff - Appellee | : | |
| | : | |
| -vs- | : | |
| | : | |
| BARNES ADVERTISING | : | Case No. CT2024-0134 |
| CORPORATION | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Muskingum County
                               Court of Common Pleas, Case No.
                               CH2024-0096



JUDGMENT:                      Affirmed



DATE OF JUDGMENT:              May 22, 2025



APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

Brodi J. Conover                       Michael A. Galasso
Carly M. Sherman                       Charles E. Rust
2 East Mulberry Street                 312 Elm Street, Suite 2200
Lebanon, Ohio 45036                    Cincinnati, Ohio 45202

*Gormley, J.*

**{¶1}** This dispute — which involves the eminent-domain powers of a little-known political subdivision — is before this court after a bench trial in Muskingum County. The judge at that trial concluded that the proposed appropriation of two billboard easements was being undertaken by the political subdivision for a legitimate public use, so he approved the taking. Because we too conclude that the appropriations are necessary for a public use, we now affirm.

**Facts and Procedural History**

**{¶2}** A driver traveling eastbound through Muskingum County on Interstate 70 who takes the exit ramp into downtown Zanesville will soon come to the intersection of North Fifth Street and Elberon Avenue. Located at the southwest corner of these roads is a parcel of land owned by the Muskingum County Convention Facilities Authority (the "CFA"). That property is currently occupied by the Muskingum County Welcome Center, along with a parking lot and two billboards.

**{¶3}** The billboards are located within easements that were granted to Barnes Advertising Corporation by the Zanesville-Muskingum County Port Authority when the parcel was purchased by the port authority in 1996. Title to the parcel was subsequently conveyed to the CFA, subject to Barnes's billboard easements.

**{¶4}** A convention facilities authority is a political subdivision that can be created by a resolution of the county commissioners "for the benefit of the people . . . and for the enhancement of their convention and recreational opportunities." R.C. 351.12. County commissioners were first empowered by the General Assembly to create convention

facilities authorities in 1986, and Muskingum County's CFA was established two or three years later.

**{¶5}** Since the early 2000s, the CFA has been taking steps to develop the parcel of land into a "gateway district" to revitalize downtown Zanesville. In furtherance of that plan, the CFA hired a construction manager, developed construction plans and project specifications, and secured the funding necessary to complete the project. The gateway-district plans call for the construction of two outdoor multi-purpose covered pavilions at the same location where the billboards currently stand. Those pavilions cannot be built if the billboards remain in their current position.

**{¶6}** In December of 2023, the CFA approached Barnes with a certified appraisal of the billboard easements' value and an intent-to-acquire letter. Barnes and the CFA could not, however, reach an agreement for the sale of the easements, so the CFA initiated formal eminent-domain proceedings against Barnes by filing a petition for appropriation.

**{¶7}** The case proceeded to a bench trial where the trial judge, finding that the taking was necessary for a public use, ruled in favor of the CFA's appropriation and scheduled a hearing to determine how much Barnes will be entitled to receive for its easements. Barnes now appeals, contending that the underlying petition for appropriation was impermissibly vague, that the CFA's construction plans are indeterminate, and that the CFA failed to meet its evidentiary burden.

## The Authority's Petition for Appropriation Was Not Deficient

**{¶8}** In its first assignment of error, Barnes argues that the CFA's petition for appropriation was deficient because that petition did not contain any plans, specifications, or drawings that could inform Barnes about the intended purpose of the appropriation.

**{¶9}** When any Ohio political subdivision initiates an appropriation proceeding, it must file a petition for appropriation that contains, among other things, "[a] statement of the purpose of the appropriation." R.C. 163.05(C).

**{¶10}** The CFA's petition to appropriate the billboard easements states that "[t]he [CFA] is currently undertaking a public project to develop a new facility serving the City of Zanesville and Muskingum County community." That petition describes the "new facility" as "any convention, entertainment, or sports facility, or combination of them, located within the territory of a convention facilities authority, together with all hotels, parking facilities, walkways, and other auxiliary facilities, real and personal property, property rights, easements and interests that may be appropriate for, or used in connection with, the operation of the facility."

**{¶11}** This description of purpose given by the CFA complies with the requirements of R.C. 163.05(C). Though the CFA's petition recites the statutory definition of "facility" found in R.C. 351.01(D), the statement-of-purpose requirement of R.C. 163.05(C) does not require a petition to contain detailed specifications of the appropriating agency's intended use. *See St. Marys v. Dayton Power & Light Co.*, 79 Ohio App.3d 526, 537–538 (3d Dist. 1992) ("[w]hile it is true that R.C. 163.05(C) requires the complaint to state the uses to which the property taken is to be put, it does not indicate that a detailed statement is required . . . The law does not require the appropriating party

to express its policy decisions or background reasons motivating it to request the appropriation").

**{¶12}** We conclude that the CFA's statement in the petition that the billboard easements are being appropriated to develop a new facility, together with the petition's inclusion of the statutory definition of a facility, sufficiently spelled out the purpose of the appropriation and met the standard set by R.C. 163.05(C). Barnes's first assignment of error is overruled.

## The Authority Introduced Sufficient Evidence to Support the Appropriation

**{¶13}** In its second assignment of error, Barnes argues that, even if the petition for appropriation is not deficient, the proposed construction plans are too indeterminate. Barnes also argues that the CFA failed to meet its burden to prove that the appropriations are necessary for a public use.

**{¶14}** Barnes's arguments involve legal questions as well as issues surrounding the evidence that was introduced at the bench trial. We review the legal questions without deference to the trial court, but we defer to the trial court's findings of fact, reviewing them "only for clear error." *State ex rel. Ohio History Connection v. Moundbuilders Country Club Company*, 2022-Ohio-4345, ¶ 24. An agency's eminent-domain power must be "construed strictly" so that "any doubt over the propriety of the taking is resolved in favor of the property owner." *Norwood v. Horney*, 2006-Ohio-3799, ¶ 71, citing *Pontiac Improvement Co. v. Bd. of Commrs. of Cleveland Metropolitan Park Dist.*, 104 Ohio St. 447, 453–454 (1922).

## A. The Takings Are Not Intended Merely for a Possible and Undetermined Use

{¶15} We note, at the outset, that the CFA's construction plan is not — as Barnes argues — impermissibly speculative. To be sure, "[a] municipal corporation has no power or authority to appropriate lands for some contemplated but undetermined future use." *State ex rel. Sun Oil Co. v. City of Euclid*, 164 Ohio St. 265 (1955), paragraph four of the syllabus. That is not the case here.

{¶16} In *City of Euclid*, the Supreme Court of Ohio prohibited a municipality from appropriating property for the construction of a highway. *Id.* at 272. The record in that case demonstrated that the municipality had not started discussions for the construction of its proposed highway with any county, state, or federal officials, and it had not passed any resolutions establishing the highway within the city limits. *Id.* at 271. The record instead indicated "that the so-called appropriation was only an abortive attempt to acquire title to this property for possible future highway purposes." *Id.*

{¶17} At the bench trial in this case, the CFA introduced the testimony of its executive director, Stephanie Winland. She testified that the CFA had drawn up construction plans and renderings for the gateway district, sourced the necessary funding to complete the construction, and hired a construction manager. She further testified that the construction plans had been finalized, that construction was ready to begin, and that the CFA was in a "holding pattern" until the appropriations could be completed.

{¶18} The evidence demonstrates to us that the gateway district is not "still in a visionary stage." *City of Euclid* at 271. We agree with the trial court that the CFA has taken "substantial steps" in furtherance of the project, and we find Barnes's reliance on *City of Euclid* unpersuasive.

**B. The Authority Established That the Appropriations Are "Necessary" for a "Public Use"**

**{¶19}** Barnes argues that the billboard appropriations are not necessary for the CFA to complete the gateway district and that the appropriations are intended for a non-public revenue-generating purpose.  We disagree.

**{¶20}** Ohio law generally provides that "[n]o agency shall appropriate real property except as necessary and for a public use. In any appropriation, the taking agency shall show by a preponderance of the evidence that the taking is necessary and for a public use."  R.C. 163.021(A).

**{¶21}** An appropriation is "necessary" when it is "'reasonably convenient or useful to the public; it is not limited to an absolute physical necessity.'"  *State ex rel. Ohio History Connection v. Moundbuilders Country Club Company*, 2020-Ohio-276, ¶ 37 (5th Dist.), quoting *Sunoco Pipeline L.P. v. Teter*, 2016-Ohio-7073, ¶ 86 (7th Dist.).  Moreover, a resolution or ordinance passed by the appropriating agency that declares the necessity of the appropriation creates a rebuttable presumption of necessity when the agency is not appropriating the property because it is a blighted parcel.  R.C. 163.09(B)(1)(a).  "[I]f the landowners produce[] evidence that balances or counterbalances the presumption, then the presumption disappears and the case must be resolved on the evidence presented under the original burden of proof."  *Ohio Power Company v. Burns*, 2022-Ohio-4713, ¶ 32.

**{¶22}** Ohio law defines "public use" by listing what uses are not public.  A public use "does not include any taking that is for conveyance to a private commercial enterprise, economic development, or solely for the purpose of increasing public revenue."  R.C. 163.01(H)(1).

**{¶23}** This particular project will serve a public use, even though a goal of the project is to increase public revenue. Stephanie Winland testified about the CFA's intended use of the property after it completes construction of the gateway district. She testified that the most significant use would be to host weekly farmers markets in the covered pavilions. Evidence was introduced that downtown Zanesville is classified as a "food desert" because its residents do not have access to fresh produce and meat within walking distance. The farmers markets — Winland said — would remedy that problem without generating profits for the CFA, as each merchant at the market would be charged a fee to cover only the CFA's utility and cleaning expenses.

**{¶24}** Winland, moreover, testified that several not-for-profit organizations will use the space to host public events, including artist gatherings, community fundraisers, and child-literacy events organized by the Muskingum County Library. The organizations hosting these events, like the merchants at the farmers markets, would be charged only a utility-and-cleaning fee.

**{¶25}** Though we note that the appropriations are motivated, in part, by the CFA's statutory mission to promote tourism and increase public revenue in downtown Zanesville, the evidence also demonstrates, by a preponderance of the evidence, that the appropriations will serve the public in ways that are not *solely* related to increasing public revenue.

**{¶26}** Even so, we do not agree with one argument made here by the CFA. That one focuses on the public-use requirement and R.C. 351.22. Convention facility authorities in Ohio are organized under Chapter 351 of the Revised Code. R.C. 351.22 — the section of that chapter dealing with appropriations — empowers the CFA to

"acquire . . . any public or private lands . . . as it finds necessary or proper for the construction or the efficient operation of any facility." The CFA argues that, because R.C. 351.22 allows it to appropriate property when it finds that an appropriation is necessary to construct a facility, R.C. Chapter 163's "provisions governing proper 'public purposes' for governmental appropriations, and case law analyzing those statutes, do not control this case." In essence, the CFA argues that R.C. 351.22 is a legislative determination that the construction and operation of a facility is a per se public use. We disagree.

**{¶27}** R.C. 163.021(A), we emphasize, mandates that "[*n*]*o agency* shall appropriate real property except as necessary and for a public use. *In any appropriation*, the taking agency shall show by a preponderance of the evidence that the taking is necessary and for a public use." (Emphasis added.) Chapter 163, with limited exceptions not relevant here, sets forth the appropriation-of-property requirements for *all* divisions of government in Ohio. R.C. 163.02(A). With limited exceptions again not relevant here, all entities with eminent-domain power, though defined and described in different chapters of the Revised Code, are bound by R.C. 163.021(A). *See, e.g.,* R.C. 307.08 (appropriation statute for county commissioners governed by R.C. 163.021(A)); R.C. 308.07 (appropriation statute for regional airport authorities governed by R.C. 163.021(A)).

**{¶28}** Determining whether an appropriation serves a public use is always a judicial function. *See Norwood*, 2006-Ohio-3799, ¶ 67, quoting *Public Service Co. of Oklahoma v. B. Willis, C.P.A., Inc.*, 1997 OK 78, ¶ 19 ("'the issue of whether a proposed taking is for a 'public use' is a judicial question'"). "'[P]ublic use is not established as a matter of law'" simply by virtue of the fact that "'the legislative body acts.'" *Id.* at ¶ 66,

quoting *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F.Supp.2d 1123, 1129 (C.D.Cal. 2001). Because Ohio "precedent does not demand rote deference to legislative findings in eminent-domain proceedings . . . 'whether * * * proposed condemnations [are] consistent with the Constitution's 'public use' requirement [is] a constitutional question squarely within the Court's authority.'" (Bracketed text in original.) *Id.* at ¶ 69, quoting *County of Wayne v. Hathcock*, 471 Mich. 445, 480 (2004).

**{¶29}** Having found — under R.C. 163.021(A) — that the appropriations in this case serve a public use, we turn to the next issue: necessity. The board of directors of the CFA passed Resolution No. 2024-6 in March 2024. That resolution states that "the Board finds it necessary to exercise its eminent domain authority, in accordance with Ohio Revised Code chapters 351 and 163, in order to appropriate the Property for the purposes of completing the project." The CFA's approval of Resolution 2024-6 had the effect, under R.C. 163.09(B)(1)(a), of "creat[ing] a rebuttable presumption of the necessity for the appropriation."

**{¶30}** Barnes did not call any witnesses at the trial to rebut this presumption, choosing instead to cross-examine Stephanie Winland and introduce its three exhibits. We find nothing in that cross-examination or in the exhibits — which consisted of copies of the complaint, the answer, and a response to a public-records request — that rebutted the statutory presumption of necessity. The exhibits related to Barnes's petition-deficiency argument, and the persuasiveness of Windland's testimony regarding necessity was substantially unchanged by the cross-examination of her.

**{¶31}** Winland testified that the project cannot be completed if the billboards remain in their current location. The construction project involves moving existing utility

lines underground. Because of where those utility lines will be installed, and because the CFA is prohibited from building on top of underground utility lines, the pavilions cannot be constructed anywhere other than where the billboards currently stand. Moreover, Winland testified that the proposed location for the pavilions allows access to a nearby building that will be renovated to create storage space for vendors and Americans-with-Disabilities-Act-compliant restrooms for guests. On cross-examination, she emphasized that alternate locations such as Zane Landing Park would be too far removed from the downtown area to be viable and that the CFA cannot host the farmers markets or non-profit events without constructing the covered pavilions because those organizations cannot consistently afford to rent their own pavilion-sized tents for outdoor events.

{¶32} The record before us demonstrates that the CFA met its burden of proving that the appropriations are necessary for a public use. Barnes's second assignment of error is overruled, and the judgment of the trial court is affirmed.

By: Gormley, J.

King, P.J. and

Popham, J. concur.